INZER, Justice:
This is an appeal by Joe H. Tally, acting in his official capacity of Superintendent of Education of Smith County, and the Board of Education of Smith County from a judgment of the Circuit Court of Smith County affirming an order of the Board of Supervisors of Smith County relocating the offices of the County Superintendent of Education from the county office building to the courthouse. We affirm.
The order in question was entered by the board of supervisors at its regular June 1973 term and it reads as follows:
The Board having considered the matter of starting a food stamp program in this County and having requested the Director of the County Welfare Department to submit the requirements for a food stamp program and the Director of the County Welfare Department has submitted the requirements in response to said request and based on this report from the said Director and from other evidence this Board finds that it is necessary to have office space to administer this program and since the program will be administered by the County Welfare Department and since the space now oc *555 cupied by the County Superintendent of Education is located next to the County Welfare Department and since the Board finds that the County Superintendent of Education should be in the courthouse with other offices, this Board now finds that it would be to the best interest of Smith County, Mississippi for the Justice of the Peace of District No. Four to move from the three offices now occupied by him on the west end of the annex to the courthouse to the office previously occupied by Judge Currie and for the County Superintendent of Education to move to the three rooms on the west end of the Courthouse annex now occupied by the Justice of the Peace of District No. Four; now, therefore
Be it ordered by the Board of Supervisors of Smith County, Mississippi, that the Justice of the Peace of District No. Four of Smith County, Mississippi, move from his present location to the upstairs office on the Southeast corner of the Courthouse and for the County Superintendent of Education to move to the three rooms on the West end of the Courthouse annex now occupied by said Justice of the Peace with the School Board meetings to be held in the Supervisor’s Board room.
Be it further ordered that the office transfers be made within ten days from this date and the Clerk is hereby directed to furnish certified copy of this Order to each of the offices concerned.
Ordered this the 4th day of June, 1973.
A copy of the order in question was served upon the parties involved and on June 14, 1973, the county superintendent of education wrote the following letter to the board of supervisors:
I am taking this means of informing you that, with the support' of the Smith County Board of Education, I decline to obey this order.
It is my information that the minutes of the meeting wherein the said order was made have never been drawn or signed by the president of the Board of Supervisors, as is required by law. Until this has been done the order has no legal effect and cannot bind either me or the Board of Education.
If and when the Board of Supervisors decides to make this action final, please notify my office.
The board of supervisors remained in session until June 20, 1973, when it adjourned, and at that time the minutes were duly signed. After the board adjourned another copy of the order was served upon the parties involved. Thereafter on June 22, 1973, the superintendent of education and the county board of education filed a petition styled “Petition for a Hearing.” On June 28, 1973, the superintendent of education and the school board filed a bill of exceptions with the clerk of the board of supervisors. On June 29, 1973, the president of the board of supervisors refused to sign the bill of exceptions on the ground that the instrument submitted as a bill of exceptions was not a proper bill of exceptions. Thereupon the county superintendent of education and the board of education served notice of appeal on the clerk of the board requesting him to transcribe the complete record including the bill of exceptions and other documents, and to forward the same to the clerk of the Circuit Court of Smith County. The clerk complied with the request and upon a hearing of the appeal in circuit court, a jugdment was entered affirming the order of the board of supervisors. Hence this appeal.
Appellants assert five grounds for the reversal of the judgment of the circuit court. They are as follows :
1. The appellant was denied due process of law because it did not receive adequate notice and a hearing prior to the decision of the board of supervisors.
2. The order is without effect because it was not issued by the board of supervisors in an open and public proceeding.
*556 3. The order is void because it is unreasonable, arbitrary, capricious and not based on substantial evidence.
4. The order is void because it is impossible of performance.
5. The board of supervisors is without authority to determine where the board of education shall have its office.
The principal contentions of appellants are that they were denied due process of law in that they had no notice that their rights were being adjudicated, and they were denied a hearing wherein they could present evidence. Appellants’ argument in this regard is based upon the assumption that the board of supervisors was acting in its judicial capacity when it entered the order in question. This makes it necessary to first determine exactly what function the board was performing when it entered the order in question.
It has long been recognized that the board of supervisors is a body which exercises judicial, legislative and executive powers. In the case of Ex Parte Fritz, 86 Miss. 210, 221, 38 So. 722, 724 (1905), it was contended that the board of supervisors was a judicial body and as such could not properly exercise under the Constitution of Mississippi powers of the other two branches of government. In reply to this argument, this Court stated: “It [Board of Supervisors] is not, strictly speaking, a judicial body. Its jurisdiction is now, and has always been, mixed, being in part legislative, in part judicial, and in part executive ”
As we understand the argument of appellants, it is not contended that the board of supervisors does not have the power to control the buildings in question and to allocate office space in the courthouse and in the county office building. We are of the opinion that the board of supervisors does have the power to allocate space in the courthouse and in the county office building, and when it makes such an allocation it is performing an executive function and not a judicial function. In the exercise of this function it was not required to give those affected by the order notice of its intention so to do. Neither were the parties affected thereby entitled to a hearing.
We are not dealing in this case with a dispute between the board of supervisors and individuals, but rather a dispute between state agencies created by the legislature. The board of supervisors is a constitutionally created agency endowed by the legislature with certain powers. The board of education is an agency created by the legislature endowed with certain powers. The county superintendent of education is a public official acting in his official capacity. Since the board of supervisors does have the power to allocate space in the courthouse or the county office buildr ing, it would be impractical to hamper them in the exercise of this duty to administer these buildings by granting traditional due process safeguards to those affected by the order. Especially is this true since the due process requirement of the Fourteenth Amendment to the Constitution of the United States, and Section 14 of the Mississippi Constitution (1890) are directed to the protection of individuals and do not apply to frustrate state agencies in their relationship with each other. 16 Am.Jur.2d, Constitutional Law §§ 558, 559 (1964).
Appellants also contend that although the board of supervisors has the power to control and allocate the office space in the courthouse, it does not have the power to determine where the office of the board of education and the county superintendent shall be located. Appellants argue that Section 25-1-99, Mississippi Code 1972 Annotated, provides that all county officers shall have their offices in the courthouse except the county superintendent of education, who may have his office at the courthouse or any other place in the county that may be determined by the county board of education. We do not so construe the statute. The pertinent portions of Section 25-1-99 provide as follows:
The clerks of the circuit and chancery courts, the county superintendents of ed *557 ucation, the county tax assessors, and the sheriffs shall keep their offices at the courthouses of their respective counties if offices shall be there provided for them. If offices shall not be there provided for them, they shall keep their offices within one-fourth mile of the courthouses of their respective counties; except that the office of the county superintendent of education may be placed in the county in any other place determined by the county board of education to be most feasible, regardless of the distance from the courthouse.
It is clear from a reading of the foregoing statute that the county superintendent of education is required to keep his office in the courthouse if offices be there provided for him. It is only when an office is not provided in the courthouse that the county board of education has the power to determine where the offices of the county superintendent may be located. Here the board of supervisors has provided space for the county superintendent of education in the courthouse, and the county superintendent is required by this statute to so locate his office. As for the county board of education, it is required by Section 37-5-27, Mississippi Code 1972 Annotated to meet at the courthouse or the office of the county superintendent of education, where such office is in a building separate from the courthouse. This statute also makes special provisions for meetings of the county boards of education in counties having two judicial districts, but this portion of the statute has no application here.
We find no merit in appellants’ contention that the order of the board of supervisors was arbitrary and capricious and the circuit court was in error in not so holding. The order itself recites the reason why, in the opinion of the board of supervisors, that the office of the food stamp program be located in' the county office building and why the office of the superintendent should be in the courthouse. Under these circumstances we do not think it can be said that the order of the board was arbitrary and capricious.
We have carefully considered the other propositions argued by appellants and find them to be without merit.
For the reasons stated, we are of the opinion that the action of the circuit court in affirming the order of the board of supervisors was correct. In reaching this decision we have not overlooked the argument of the appellants that the space provided in the courthouse is not adequate to meet the needs of the county superintendent of education. However, as we view this case, the question of whether the space is adequate is not properly before the Court at this time, and we express no opinion in this regard.
Affirmed.
RODGERS, P. J., and PATTERSON, WALKER and BROOM, JJ., concur.